(Not for publication) (Docket No. 5)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

| | |
|---|---|
| LOCAL UNION NO. 825, 825A, 825B, 825C, 825D, 825R, 825RH, INTERNATIONAL UNION OF OPERATING ENGINEERS, AFL-CIO, et al., | |
| Plaintiffs, | Civil No. 05-3269 (RBK) |
| v. | **OPINION** |
| KEY CONTRACTING, LLC, | |
| Defendant. | |

**KUGLER**, District Judge:

This matter comes before the Court upon motion by Plaintiffs (1) Local Union No. 825, 825A, 825B, 825C, 825D, 825R, 825RH, International Union of Operating Engineers, AFL-CIO; (2) Operating Engineers Local 825 Fund Services Facilities; and (3) The Board of Trustees of the Operating Engineers Local 825 Fund Services Facilities (collectively "Plaintiffs") for entry of default judgment and enforcement of an arbitration award against Defendant Key Contracting, LLC.  For the reasons that follow, the Court will grant the Plaintiffs' motion.

## I. BACKGROUND

### A. The Parties

Plaintiff Local Union No. 825, 825A, 825B, 825C, 825D, 825R, International Union of Operating Engineers, AFL-CIO ("Local 825") is an unincorporated labor organization with a

principal office in Springfield, New Jersey. From 2002 through 2005, Local 825 was the collective bargaining representative for the constructive equipment operators and other employees working for the Defendant. (Compl. ¶¶ 3, 8.)

Plaintiff Operating Engineers Local 825 Fund Services Facilities ("Fund Services") is also located in Springfield, New Jersey and manages a number of fringe benefit plans for Local 825. (Compl. ¶ 4.) These managed funds[1] are multi-employer welfare plans, pension plans, and employee benefit plans within the meaning of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1002(1), (2), (3). (See Compl. ¶5.) The Funds are administered through various benefit plans, trust agreements and declarations. (Compl. ¶ 5.) The Trustees comprising Plaintiff Board of Trustees of the Operating Engineers Local 825 Fund Services Facilities are fiduciaries within the meaning of ERISA, 29 U.S.C. §§ 1002(21), 1102. (See Compl. ¶ 6.)

Defendant Key Contracting, LLC ("Key") is an employer with a principal office in Browns Mills, New Jersey. From 2002 through 2005, Key employed construction equipment operators and other workers at various job sites in New Jersey. (Compl. ¶¶ 7, 8.)

**B. The Parties' Agreements**

From 2002 through 2005, Local 825 and Key were parties to a collective bargaining agreement known as the Independent Contractors Agreement ("ICA") as well as a Residential Housing Agreement ("RHA"). (Compl. ¶ 9.) The ICA also incorporated by reference the terms of the Trust Agreements governing the Funds managed by Fund Services. (Compl. ¶ 11) The

---

[1] Specifically, these funds include a Welfare Fund, a Pension Fund, an Apprenticeship Training Fund, a Supplemental Unemployment Benefit Fund, a Savings Fund, an Industry Advancement Fund, and an Annuity Fund (collectively "Funds").

ICA had an effective date of July 1, 2002 and a termination date of June 30, 2005, whereas the RHA became effective November 1, 2002. (Compl. ¶ 9.)

Under the terms of the ICA, Key had several obligations. First, between 2002 and 2005, the ICA required Key to remit weekly contributions to the Funds on behalf of all employees performing work covered by the ICA. (Compl. ¶ 10; ICA, arts. VIII through XIV.) Second, the ICA obliged Key to deduct from employees' wages, and remit to Local 825, a work assessment that constituted part of Local 825's dues check-off. (Compl. ¶ 12; ICA, art. XVI.) Third, the ICA provided that Key also had to deduct from employee's wages, and remit to Local 825, a Political Action Committee ("PAC") contribution. (Compl. ¶ 13; ICA, art. XVII.)

The auditors of the Funds conducted an audit of Key's payroll records covering the period January 1, 2004 through December 31, 2004. (Compl. ¶ 14.) The audit revealed that Key had failed to make weekly contributions to the Funds as required by the collective bargaining agreement. (Compl. ¶¶ 15-17.) The auditors also found that Key had failed to remit the work assessments and PAC contributions required under the ICA. (See Compl. ¶ 18.) In a March 11, 2005 letter sent by certified mail, the Funds notified Key of its delinquencies. (Compl. ¶ 15.) Despite the notification sent by the auditors, Key still failed to pay the fringe benefit contributions, work assessments, and PAC contributions owed to Local 825 and the Funds. (Compl. ¶¶ 16, 18.)

Consequently, pursuant to the terms of the ICA and the Trust Agreements, Local 825 and Fund Services submitted their claims against Key to arbitration. (Compl. ¶ 20; see ICA, art. XVIII.) Joseph Licata, Esquire served as the arbitrator and conducted an arbitration hearing on May 9, 2005. (Compl. ¶¶ 22-23.) However, no representative from Key appeared at the hearing. (Compl. ¶ 24.) On May 19, 2005, Licata issued an arbitration award finding that Key owed the

Local 825 and Fund Services the sum of $171,459.44.[2] (Compl. ¶ 25.)

Shortly thereafter, on June 30, 2005, Plaintiffs filed the Complaint in this action seeking enforcement of the $171,459.44 arbitration award. Plaintiffs also request interest, attorney's fees, and costs as provided by the ICA and ERISA. On September 20, 2005, the Plaintiffs personally served Key with a copy of the Summons and Complaint. Key has failed to appear, plead or otherwise defend in this matter. Consequently, the Clerk entered default against Key on November 11, 2005. On November 17, 2005, Plaintiffs filed the present motion for (1) entry of default judgment against Key and (2) enforcement of the arbitration award with interest, attorney's fees, and costs. In total, the Plaintiffs request judgment in the amount of $182,431.41. To date, Key has not made any payment on the monies owned to Plaintiffs.

## II. DISCUSSION

### A. Default Judgment

Federal Rule of Civil Procedure 55(b)(2) authorizes courts to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading. Anchorage Assoc. v. Virgin Is. Bd. of Tax Rev., 922 F.2d 168, 177 n.9 (3d Cir. 1990) ("When a defendant fails to appear . . . , the district court or its clerk is authorized to enter a default judgment based solely on the fact that the default has occurred."). The entry of a default judgment is largely a matter of judicial discretion, although the Third Circuit has emphasized that such "discretion is not without limits, however, and we have repeatedly stated our preference that cases be disposed of on the merits whenever practicable." Hritz v. Woma Corp., 732 F.2d 1178, 1180, 1181 (3d Cir. 1984) (citations omitted).

---

[2]The arbitrator also awarded additional amounts for interest, attorney's fees, and costs. (See Arbitration Award, attached as Exhibit A to Whittles Affidavit.)

Although the Court should accept as true the well-pleaded factual allegations of the Complaint, the Court need not accept the moving party's legal conclusions or factual allegations relating to the amount of damages. Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990); Directv, Inc. v. Asher, No. Civ. A. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing Charles A. Wright, Arthur R. Miller & Mary Kay Kane, 10A Federal Practice and Procedure § 2688, at 58-59, 63 (3d ed. 1998)).  Consequently, before granting a default judgment, the Court must first ascertain whether "the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." Asher, 2006 WL 680533, at *1 (citing Wright, Miller, & Kane, § 2688, at 63); Directv, Inc. v. Croce, 332 F. Supp 2d 715, 717 (D.N.J. 2004)). The Court must also "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty."  In re Industrial Diamonds, 119 F. Supp. 2d at 420 (citing Credit Lyonnais Securities (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)).

   1.  Cause of Action

In the Complaint, the Plaintiffs allege causes of action pursuant to ERISA and the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.  Applying the unchallenged factual allegations in the Complaint to the requirements of those statutes demonstrates that the Plaintiffs state legitimate claims under ERISA and the LMRA.

Section 515 of ERISA provides that any employer, who is obligated to make contributions to a multiemployer plan under a collective bargaining agreement, must make such contributions in accordance with the terms and conditions of that agreement. 29 U.S.C. § 1145. If an employer who is obligated to make contributions fails to do so in violation of the collective bargaining agreement, then the Court may award the plan (1) the unpaid contributions; (2)

interest on the unpaid contributions; (3) an amount equal to the greater of the (a) interest on the unpaid contributions, or (b) liquidated damages; (4) reasonable attorney's fees and costs of the action; and (5) such other legal or equitable relief as the court deems appropriate. 29 U.S. C. § 1132(g).  The ICA between the present parties required Key to make contributions to a multiemployer plan in the form of fringe benefit contributions. (See ICA, art. VIII through XIV.) Moreover, there is no dispute that the relevant parties to this suit qualify as entities that are subject to ERISA's provisions. (See Compl. ¶¶ 5-6).  Accordingly, because the Defendant has not paid its required contributions as set forth in the ICA, the Plaintiffs state a cause of action under ERISA.

In addition to their ERISA claims, Plaintiffs also request payment for the work assessments and PAC contributions that Defendant failed to remit in violation of the ICA. Specifically, Articles XVI and XVII of the ICA require Key to remit the work assessment/union check off and PAC contribution.  In turn, § 301 of the LMRA provides for jurisdiction in the district courts of the United States in "suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." See 29 U.S.C. § 185.  Therefore, because Local 825 is such a labor organization representing employees in an industry affecting commerce, Plaintiffs' uncontested allegations that Key violated the ICA by failing to remit the work assessments and PAC contributions state a cause of action  under the LMRA. See Trustees of Mason Tenders Dist. Council v. Multi Recycling Corp., No. 04-3051 DLC, 2005 WL 3446042, at *4 (S.D.N.Y. 2005) (noting that a labor organization's claims for unpaid dues checkoffs and PAC contributions are governed by the LMRA)).

    2.  *Emasco* Factors

In addition, to assess whether entry of a default judgment is appropriate, the Court must

also consider three factors: (1) whether plaintiff will be prejudiced if default is not granted, (2) whether defendant has a meritorious defense, and (3) whether defendant's delay was the result of culpable misconduct. Carpenters Health & Welfare Fund v. Naglak Design, 1995 WL 20848 *2 (E.D. Pa. 1995) (citing Emasco Ins. Co. v. Sambrick, 834 F.2d 71, 73 (3d Cir. 1987); Hritz, 732 F.2d at 1181) (granting default judgment in a case similar to that at bar, for failure to submit remittance reports and pay contributions to funds as required by collective bargaining agreement).  However, where the Defendant has not filed any responsive pleadings or otherwise shown cause why default judgment should not be granted in Plaintiffs' favor, the Court is "not in a position to judge whether the Defendant has a meritorious defense or whether any delay was the result of culpable misconduct." Id.  Therefore, because Key has not made any appearance in this matter, the remaining question for the Court is whether the Plaintiffs will be prejudiced if default is not granted. Id.

In this situation, Plaintiffs will have no means of vindicating their claims against Key unless default is granted.  Plaintiffs have apparently pursued their claims through appropriate channels by first submitting their claims to arbitration, then winning an arbitration award, and now seeking to enforce payment of that award in this Court.  By contrast, Key did not participate in the arbitration, nor has it responded to Plaintiffs' pleadings in this matter or provided any defense to the claims against it. See Asher, 2006 WL 680533 *2 (granting default judgment where defendant "has not responded in any fashion," "has not asserted any meritorious defense," and has not "offered any excusable reason for his default").  Moreover, Key's failure to make the required contribution payments and remittances is a drain on the Plaintiffs' assets, as is continued litigation in a case where the Defendant chooses not to participate. See Carpenters Health, 1995 WL 20848 *2 (E.D. Pa. 1995) (finding that failure to make timely payments to plaintiff multi-

employer benefit fund prejudices plaintiff).  Because Plaintiffs have no other means of pursuing their claims against Key, they will be prejudiced if default is not granted.  Accordingly, the relevant Emasco factors recommend that entry of default judgment is appropriate.

Because the Plaintiff's uncontested allegations state causes of action under ERISA and the LMRA and the relevant Emasco factors counsel in favor of granting Plaintiffs' motion, this Court will grant Plaintiffs' motion for entry of default judgment against Defendant.

### B.  Enforcement of Arbitration Award

In connection with the entry of default judgment, the Plaintiffs also seek enforcement of the arbitration award against Key.  Federal district courts have jurisdiction under § 301 of the LMRA not only to compel contract arbitration of labor contracts, but also to enforce arbitration awards made pursuant to such contracts. Local 336, Am. Federation of Musicians, AFL-CIO v. Bonatz, 475 F.2d 433, 435 (3d Cir. 1973) (citations omitted).

When reviewing an arbitration award, courts must enforce the award "if it is based on an arguable interpretation of the collective bargaining agreement." Exxon Shipping Co. v. Exxon Seamen's Union, 73 F.3d 1287, 1291 (3d Cir. 1996) (citing News America Publications, Inc. v. Newark Typographical Union, Local 103, 918 F.2d 21, 24 (3d Cir. 1990)); see United Transportation Union Local 1589 v. Suburban Transit Corp., 51 F.3d 376, 380 (3d Cir. 1995) (noting that "[a]n arbitration award draws its essence from the bargaining agreement if the interpretation can in any rational way be derived from the agreement") (citations omitted).  A court may not overrule an arbitrator's decision just because it disagrees with the arbitrator's interpretation of the contract. News America Publications, 918 F.2d at 24.  The court may only vacate an arbitration award if it is entirely "unsupported by the record or reflects a 'manifest disregard' of the agreement." Exxon Shipping, 73 F.3d at 1291. Otherwise, if courts had the final

say on the merits of such arbitration awards, the judiciary would undermine the federal policy of settling labor disputes by arbitration. United Steelworkers v. Enterprise Wheel & Car Corp., 593 U.S. 593, 596 (1960).

In the present matter, the arbitrator's award has a rational basis in the collective bargaining agreements between the parties. The ICA provides in Articles XVI and XVII that the Employer (i.e. Key) shall deduct from wages and remit to Local 825 a weekly work assessment as well as a political action check off. Articles VIII through XIV further provide that Key must make weekly contributions to the Funds. The ICA also states that the Trustees of any Fund may request arbitration of any alleged delinquencies or breach of agreement regarding an employer's contributions to the Funds. (ICA, art. XVIII.) The undisputed facts in the case demonstrate that from January 1, 2004 to December 31, 2004, Key failed to make the required contributions and remittances in accordance with the provisions of the ICA. As a result, the Plaintiffs arbitrated their claims against Key. The arbitrator found that Key was, in fact, delinquent in its payments under the ICA, and therefore, entered an award of $171,459.44 plus interest, costs, and fees. The underlying award of $171,459.44 is equal to the amount that Key owed Plaintiffs under the ICA for the period running from January 1, 2004 through December 31, 2004. On these facts, the arbitrator's award is based upon an arguable interpretation of the contract, and as such, the Court will grant the Plaintiffs' motion to enforce that award of $171,459.44.

### C. Prejudgment Interest, Attorneys Fees and Costs

In addition to enforcing the $171,459.44 arbitration award, the Plaintiffs seek attorneys' fees and costs in the amount of $3,684.95 as well as pre-judgment interest in the amount of $7,287.02. The ICA provides that in any action to collect delinquent contributions from a contributing employer, the Funds are entitled to collect (1) the delinquent contributions, (2)

interest at a rate of two percent above the prime rate, (3) liquidated damages of ten percent, (4) attorney's fees and costs, and (5) auditor's fees. (ICA, art. XVIII; Whittles Affidavit, ¶ 13.)  In total, the Plaintiffs seek judgment in the amount of $182,431.41.

        1.  Prejudgment Interest

Generally, district courts have discretion to determine whether to allow prejudgment interest in claims arising under federal labor law. Glass Molders, Pottery, Plastics & Allied Workers Int'l Union v. Owens-Illinois, Inc., 758 F. Supp. 962, 975 (D.N.J. 1991) (citing Ambromovage v. United Mine Workers, 726 F.2d 972, 982 (3d Cir. 1984)).  Prejudgment interest is usually available when the damages from a breach of contract are ascertainable with mathematical precision.  Eazor Express, Inc. v. Int'l Brotherhood of Teamsters, 520 F.2d 951, 973 (3d Cir. 1975).  Because the fringe benefit contributions, work assessments, and PAC contributions owed by Key are all readily ascertainable amounts, an award of prejudgment interest is appropriate in this matter. (See ICA, arts. VIII through XVII.)  Accordingly, the Court will grant the Plaintiffs' request for $7,287.02 in prejudgment interest.

        2.   Attorney's Fees and Costs

In most arbitration enforcement actions, the Court has discretion to award attorney's fees and costs when one party, without justification, refuses to abide by an arbitration award. United Steelworkers of America, AFL-CIO v. Interpage Corp. Shenango China Division, 447 F. Supp. 387, 393 (W.D. Pa. 1978); see Mobil Oil Corp. v. Independent Oil Workers Union, 679 F.2d 299, 205 (3d Cir. 1982).  Here, Key has (1) refused to abide by the arbitration award; (2) failed to act promptly (or in any way) to vacate the award; (3) failed to appear or defend in this action; and (4) failed to otherwise raise any substantial legal issue. Cf. Mobil Oil, 679 F.2d at 205. Accordingly, the Court finds that the facts of the case justify an award of attorney's fees against

Key.

Alternatively, unlike the Court's discretionary authority to award attorney's fees in most cases, the relevant law in this matter suggests that such fees and costs <u>must</u> be awarded. Specifically, the Complaint states that this action is, at least partially, a collection action pursuant to Sections 502(g)(2) and 515 of ERISA.  Together, those two ERISA sections provide that reasonable attorneys' fees and costs shall be awarded when the Court enters a judgment enforcing an employer's obligation to pay delinquent contributions. 29 U.S.C. §§ 1132(g)(2), 1145.  Because the Court's entry of judgment in this case is a judgment which enforces Key's obligation to pay delinquent contributions by confirming the arbitration award, the mandatory attorneys' fees provisions in ERISA appear to be applicable.  See <u>Trustees of Amalgamated Ins. Fund v. Geltman Industries, Inc.</u>, 784 F.2d 926, 932 (9th Cir. 1986) (finding that the mandatory attorneys' fees provisions in Section 1132(g) applies to an action where the Plaintiffs seek to enforce an arbitration award regarding delinquent withdrawal payments).

In any event, David Grossman, the attorney for Plaintiffs, has submitted a detailed affidavit in support of Plaintiffs' request for fees and costs.  The affidavit provides that Grossman has over 20 years of experience as a practicing attorney and has spent thirteen hours of work on this matter at an hourly rate of $260.[3]  The affidavit also contains a chart which provides the date,

---

[3] Although the reasonableness of an attorney's hourly rate is usually based on the prevailing market rates in the relevant community, neither party here has submitted any evidence of the prevailing market rate for the services rendered.  In the absence of such evidence, and the absence of any objection to the charged rate, the Court will assume that the rates charged are the prevailing market rates. <u>Neyer, Tiseo & Hindo, Ltd. v. Russell</u>, No. Civ. A. 92-2983, 1994 WL 158917, at *2 (E.D. Pa. Apr. 29, 1994) (finding that where neither party has submitted any evidence of the prevailing market rates, the Court would assume that the charged rates actually were the prevailing rates); see <u>Cunningham v. City of McKeesport</u>, 753 F.2d 262, 266-67 (3d Cir. 1985) (vacated and remanded on other grounds) (noting that a court should not disregard the uncontested assertions of a party as to its fees without finding support in the record to do so).

time spent, and description of all services rendered. In the thirteen hours Grossman billed on this matter, he drafted and reviewed the Complaint, prepared the Summons and Civil Cover Sheet, drafted five letters and two affidavits, and drafted and prepared a Motion and Brief for Default Judgment. Additionally, Plaintiffs seek costs in the amount of $250.00 to cover the filing fee, and $54.95 for service of the Summons and Complaint. Currently, there is no objection nor evidence before the Court challenging the reasonableness of the fees and costs requested.

Altogether, whether ERISA mandates an award of attorneys' fees in this situation or whether it is up to the Court's discretion to determine any fee award, the Court finds that an award of attorneys' fees and costs is appropriate and that the amounts requested are reasonable. Consequently, the Court will award attorneys' fees and costs in the requested amount of $3,684.95.

### III. CONCLUSION

For the foregoing reasons, the Court will grant Defendant's Motion for Entry of Default Judgment and Enforcement of the Arbitration Award. The Court will enter judgment in favor of the Plaintiffs in the amount of $171,459.44 and will award Plaintiffs attorney's fees and costs in the amount of $3,684.95. The accompanying Order shall issue today.

Dated: 5-30-06  
s/ Robert B. Kugler  
ROBERT B. KUGLER  
United States District Judge

Case 1:05-cv-03269-RBK-JBR   Document 6   Filed 05/30/06   Page 13 of 13 PageID: 85